**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ARIEL BOOKER, individually, and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SCIBMATT LLC d/b/a COPELANDS OF NEW ORLEANS and BILL GOUDEY, <br><br> Defendants. | CIVIL ACTION NO.: <br> 1:22-cv-03192-LMM |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

The Parties for this matter, Ariel Booker for herself and for the members of the collective she was designated to represent, along with Defendants Scibmatt LLC and Bill Goudey, by and through their undersigned counsel, jointly move for approval of the Parties' settlement in accordance with applicable law and for dismissal of this matter with prejudice. The Parties have reached a settlement to resolve the claims raised in this proceeding, and the terms of their settlement are detailed in the Settlement Agreement, which is attached here as **Exhibit 1** for the Court's review.

The Parties agree that the terms reflected in the Settlement Agreement

are mutually satisfactory and represent a fair and reasonable compromise of the disputed claims that were asserted in this action and are in the best interests of the Parties. The settlement was reached through multiple mediation sessions conducted by the Honorable Magistrate Judge Christopher Bly of the United States Court for the Northern District of Georgia.

Accordingly, the Parties hereby submit the Settlement Agreement for approval by the Court, pursuant to *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982), and respectfully request that the Court enter the Proposed Order: (1) approving the Parties' Settlement Agreement; (2) dismissing this action with prejudice; and (3) retaining jurisdiction over this case to enforce the Parties' Settlement Agreement until payment of the settlement proceeds are received by Plaintiffs and their counsel.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

This is an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), for allegedly unpaid and unlawfully withheld tips, minimum wage violations, and unpaid overtime premiums. Plaintiff brought this matter as a putative collective action under Section 216(b) of the FLSA. This matter was conditionally certified by the Court as a collective action on January 20, 2023. After conducting substantial written discovery, the Parties engaged in a mediation beginning on February 20, 2024, under the direction of United

States Magistrate Judge Christopher C. Bly, and continuing through multiple sessions during which additional documents and records were exchanged through September 20, 2024, ultimately being resolved on October 1, 2024. The mediation was successful, and the Parties resolved the litigation in its totality.

## II.   SETTLEMENT TERMS

Under the terms of the settlement reached at mediation and memorialized fully in their Settlement Agreement, Defendants agreed to pay $145,000 to the Plaintiffs to compensate Plaintiffs for their alleged damages and attorneys' fees and costs. Of the gross settlement amount, Named Plaintiff and the members of the conditionally-certified collective will receive $96,816.66. This amount will be distributed among the Plaintiff and opt-ins based on their actual unpaid minimum wage damages and retained tips over the maximum statutory period of three years. The list of proposed individual settlement payments to the putative class is attached to the Settlement Agreement. Notably, the payments due to the class members are made in exchange for a limited release of the claims asserted in the lawsuit and the terms of the settlement are not confidential.

Finally, under the Settlement Agreement, fees in the amount of $48,183.34 are to be paid to Plaintiffs' counsel pursuant to the 33%

contingency fee arrangement that was entered into by Named Plaintiff and disclosed to the collection action class members during the notice period.

## III. ARGUMENT AND CITATION TO AUTHORITY

### A. Legal Standard for Approval of FLSA Settlements

Because the FLSA's provisions are mandatory and generally "not subject to negotiation or bargaining between employers and employees," *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982), employees can settle or compromise claims arising under the FLSA only if the settlement is supervised by the Department of Labor or approved by a federal district court. *Anthony v. Concrete Supply Co.*, No. 3:16-cv-70-TCB, 2017 WL 5639933, *1 (N.D. Ga. Aug. 23, 2017) (citing *Lynn's Food Stores*, 679 F.2d at 1353); *accord Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

In evaluating the fairness of a proposed settlement of overtime claims, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Id.* at 1355; *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1226 (M.D. Fla. 2009). If the settlement of an employee's FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage, computation of back wages owed, or hours worked that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of

4

litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

In reviewing FLSA settlements, courts in this district "often apply a two-step approach," asking first "whether the compromise is fair and reasonable to the employee," and second "whether the compromise otherwise impermissibly frustrates implementation of the FLSA . . . ." *Anthony* 2017 WL 5639933 at *1 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp.2 d 1227, 1241 (M.D. Fla. 2010)). Factors that courts consider when evaluating whether a settlement is fair and reasonable include the following:

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, risk, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the counsel.

*George v. Academy Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019). Furthermore, the fact that employees in an FLSA lawsuit are "represented by an attorney who can protect their rights under the statute" makes it "more likely" that the proposed settlement reflects "a reasonable compromise of disputed issues than a mere waiver of statutory rights brought

about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354.

In addition to reviewing the Plaintiff's recovery under an FLSA settlement agreement, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 F. App'x at 351. The FLSA provides for a mandatory award of "a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). Whether fees are to be computed based on Plaintiff's counsel's lodestar (i.e., the multiplication of counsel's reasonable hourly rates by the hours reasonably expended on the case) or as a contingency of the overall recovery, "the Court's duty is to assess the reasonableness of such fees under the circumstances." *Aguirre v. S. Fla. Multispecialty Assocs., LLC*, No. 14-CIV-21660-BLOOM/Valle, 2014 WL 12539725, *1 (S.D. Fla. Aug. 19, 2014); *accord Brenowitz v. Implant Seminars, Inc.*, No. 17-20184-CIV-GOODMAN, 2017 WL 3438879, *2 (S.D. Fla. 2017); *Nawaz v. Dade Med. Coll. Inc.*, No. 15-24129-CIV-LENARD/GOODMAN, 2017 WL 11220371, at *2 (S.D. Fla. Aug. 29, 2017), *R&R adopted at* 2017 WL 11220372 (Sept. 29, 2017).

Whether a proposed attorney's fee award is reasonable "will depend on the specifics of the particular case." *Brenowitz*, 2017 WL 3438879 at *2. Factors

6

courts have looked to when making this determination include, without limitation, the following:

1. The amount of risk assumed by plaintiffs' counsel, *Brenowitz*, 2017 WL 3438879 at *3, including risks associated with any affirmative defenses asserted by the defendants, *id.* at *4, or any "genuine coverage and computation issues in dispute," *id.* at *5;

2. The time and effort expended by plaintiffs' counsel in pursuing the claims, and the extent to which their work on this case prevented them from working on other matters, *Nawaz*, 2017 WL 11220371 at *4;

3. The results obtained by plaintiff's counsel, *Nawaz*, 2017 WL 11220371 at *4;

4. Whether "a plaintiff is sacrificing a portion of his unpaid wages recovery to fund plaintiff's attorney's fees," *Brenowitz*, 2017 WL 3438879 at *3;

5. Whether the plaintiff has consented to the amount that he is to receive under the settlement, after the award of attorneys' fees, *Aguirre*, 2014 WL 12539725 at *1;

6. Whether the record shows that the plaintiff agreed to a contingency fee agreement when retaining counsel, *Brenowitz*, 2017 WL 3438879 at *3;

7. Whether any contingency fee sought "falls within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery," *George*, 369 F. Supp.3d at 1382; and

8. Whether the relationship of any contingency fee to be awarded relative to plaintiffs' counsel's lodestar is reasonable, *Brenowitz*, 2017 WL 3438879 at *4.

As confirmed by other Courts in this Circuit, if the Parties submit a

proposed FLSA settlement that: (1) constitutes a compromise of the plaintiff's claims; (2) makes full disclosure of the terms of the settlement; and (3) represents that plaintiffs' attorney's fee was agreed upon prior to initiating this lawsuit and without regard to the amount paid to the plaintiffs, then the court will approve the settlement without separately considering the reasonableness of the attorney fees. *See Bonetti v. Embarq Management Co.,* 2009 U.S. Dist. LEXIS 68075 at *11-12 (M.D. Fla. Aug. 4, 2009).

Finally, in conducting its analysis of the proposed settlement agreement and the application of the foregoing factors, the Court should keep in mind the "strong policy and presumption" in favor of settlements. *George*, 369 F. Supp. 3d at 1367. As Judge Gregory A. Presnell observed:

> [s]hort of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement. Many factors maybe in play as the parties negotiate a compromise that is acceptable to both sides. The parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'

8

*Bonetti*, 715 F. Supp. 2d at 1227. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon*, 2010 WL 2399328, at \*6. In determining whether a settlement was negotiated at arms-length, courts look at whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Pickett v. IBP, Inc.*, No. 96-A-l 103-N, 2001 U.S. Dist. LEXIS 22453 (M.D. Ala. Dec. 21, 2001). The involvement of an objective, third-party neutral indicates arms-length negotiations. *See Martens v. Smith Barney*, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998) ("the third party mediation process was an appropriate measure for arm's length negotiations").

### B. The Settlement Agreement in this Case is Fair and Reasonable.

The Parties' Agreement in this case meets the foregoing requirements for fairness and reasonableness in all respects and furthers the policies and implementation of the FLSA statute.

#### 1. *The Settlement is Fair and Reasonable to the Plaintiffs.*

This lawsuit clearly involves a bona fide dispute in which the Court may

9

allow Plaintiffs in this action to settle and release their FLSA claims against Defendants. First, the proposed settlement arises in an adversarial context, with pending litigation and with all Parties represented by competent counsel. Indeed, each Party was represented by counsel with experience in litigating wage and hour claims on both an individual and collective basis, and counsel vigorously represented their clients' rights. The Parties reached the proposed settlement after more than a year of litigation, including extensive investigation, exchange of substantial information, and negotiations under the close supervision of an experienced class action mediator and United States Magistrate Judge.

This case presented numerous contested issues that required extensive research, investigation and discovery. Indeed, the FLSA claims asserted against Defendants involve bona fide disputes about FLSA liability and damages, and the Settlement Agreement represents a reasonable compromise of these disputed issues. In the Complaint, Plaintiffs asserted a primary theory of liability. Plaintiffs alleged that Defendants employed non-tipped employees as silverware rollers with whom the Plaintiffs were allegedly required to share tips in violation of the FLSA. Plaintiffs alleged that Defendants' practice violated the FLSA and that Defendants should be prohibited from claiming the tip credit under the FLSA. Accordingly, Plaintiffs

alleged, Plaintiffs were due to be paid the full $7.25 per hour for all hours worked plus their retained tips, as well as overtime premiums computed at the incorrect regular rate.

Defendants denied any liability under the FLSA. Defendants maintained that the alleged silverware rollers were properly tipped employees of Defendants to the extent they were used and disputed substantially that the silverware workers worked the number of shifts and hours that Plaintiffs claimed. Defendants also asserted that Plaintiffs received service charges for multiple types of work that raised the Plaintiffs' regular rates over the minimum wage for all hours worked and minimized any FLSA damages.

This evidence presented serious challenges to Plaintiffs' claims for a collective FLSA violations based on Defendants' alleged failure to provide minimum wage. Likewise, Defendants also denied that Defendants unlawfully retained Plaintiffs' tips.

Thus, there is a bona fide dispute between the Parties concerning theories of liability and damages that could impact the outcome of this litigation. Neither side believes prevailing in the litigation is a certainty, either at the trial or appellate level. Indeed, both Parties face significant risks if they continue to litigate this case. Accordingly, considering the uncertainty and risks inherent in this litigation for both Parties, and the cost and time

which would be required to pursue the litigation further, the Parties have decided that it is desirable and beneficial to settle the litigation in the manner and under the terms set forth in their Settlement Agreement.

At mediation (and in pre-mediation and post-mediation settlement discussions), the Parties and their counsel considered their competing evidence (including documents produced, data production, and data analyses) and legal arguments (including liability standards, defenses, and damages computation methodologies), and exchanged and presented competing potential damages calculations based on various assumptions and modeling scenarios. With the assistance of a skilled mediator, the Parties negotiated a settlement. Plaintiffs' counsel discussed the final settlement offer with the Named Plaintiff, who was present at mediation as representative of the class, and the other opt-ins.

Plaintiffs and their counsel agree that Defendants' final offer represents a reasonable compromise over disputed issues of fact and law and provides Plaintiffs with adequate compensation for their alleged unpaid wage damages. Pursuant to the terms of the settlement, each class member will receive compensation for their full minimum wage damages (*i.e.*, $7.25 minus the applicable direct wage rate) for all hours worked and receive reimbursement for all deductions made by Defendants during the entire three-year statutory

period. The exact amount that each Plaintiff will receive for alleged unpaid wages damages is shown in Exhibit A to the Settlement Agreement, with nominal damages assigned to members of the collective with no actual damages.

2. *The Attorneys' Fees and Costs Are Reasonable.*

Here, the Settlement Agreement provides for Plaintiffs' counsel to receive a reasonable amount of attorneys' fees, expenses and costs to resolve Plaintiffs' claims for fees and costs. As detailed in the notice and consent form that were sent to all Plaintiffs, Named Plaintiff agreed to a 33.33% contingency agreement for Plaintiffs' counsels' fees prior to the initiation of this action. Plaintiffs' attorney's fees were determined in accordance with the terms of Plaintiffs' contingency fee agreement, which permits Plaintiffs' counsel to receive the greater of either: (1) counsel's actual fees at their hourly rates; or (2) 33.33% of any sums recovered on Plaintiffs' behalf.

The Parties agree that the amount allocated to Plaintiffs' counsel for attorneys' fees and costs is fair and reasonable in light of the duration and difficulty of the litigation. The Parties advise the Court that the Plaintiffs' proposed attorneys' fees, expenses, and costs to be paid by Defendants under the Settlement Agreement are not based upon the amounts claimed to be owed

13

to each Plaintiff. Rather, the manner for determining attorneys' fees and costs in this case were negotiated in advance of initiating this lawsuit.

Though their lodestar fee is more than triple the $48,183.34 Plaintiff's counsel will receive under the Settlement Agreement, Plaintiff's counsel does not seek to recover the full value of its lodestar fees, even though the fee contract permits a fee calculated on an hourly basis, and the lodestar amount is greater than 33.33% of the total proceeds.[1]

Plaintiff's counsel, who specialize in the litigation of employment claims, represent that their fees in this case are reasonable for a case of this kind. Defendants have agreed to pay and do not object to the attorneys' fees described in the Agreement. The requested fee is in line with what other courts in this circuit have awarded. *Brenowitz*, 2017 WL 3438879 at *5 (finding that a 40% contingency fee arrangement was reasonable and fair); *Aguirre*, 2014

---

[1] As numerous courts in this circuit have previously recognized—in FLSA cases and non-FLSA cases alike—a "contingency fee arrangement often justifies an increase in the award of attorney's fees" so as to compensate plaintiffs' counsel for the risk of non-payment. *George*, 369 F. Supp. 3d at 1380–81; *see also Brenowitz*, 2017 WL 3438879 at *4 (awarding plaintiffs' counsel a 40% contingency in an FLSA case, noting that that amount of fees, "while greater than the lodestar, are designed to address the substantial risk which counsel undertook when agreeing to file this atypical lawsuit"). Courts in FLSA cases have thus awarded contingency fees that were anywhere from 1.02 to 2.28 times more than counsel's lodestar amount. *Brenowitz*, 2017 WL 3438879 at *4 (collecting cases). Here, Plaintiff's counsel seeks to rely on a contingency fee to decrease the fees they would otherwise be seeking.

WL 12539725 at *1 (same). Although the Eleventh Circuit did affirm one district court's refusal to award a 40% contingency in an FLSA case, it did so precisely because it found that the contingency fee that the plaintiffs sought in that case was *not* reasonable. *Silva*, 307 F. App'x at 351–52 (refusing to award "an agreed upon contingency fee *in an amount greater than the amount determined to be reasonable* after judicial scrutiny") (emphasis added). That is not the case here.

"[T]he reasonableness of the contingency arrangement will depend on the specifics of the particular case." *Brenowitz*, 2017 WL 3438879 at *2. Under all the circumstances of this case, the requested fee, which is less than counsel's full lodestar, is reasonable and fair and should be approved by this Court. Because Plaintiffs' counsel is accepting a significant reduction from their lodestar amount to facilitate efficient resolution of this case, the fees Defendants agree to pay, and that Plaintiffs' counsel agrees to accept, are reasonable. For all of the previously stated reasons, Plaintiffs have benefited from Plaintiffs' counsel's efforts. In addition, Plaintiffs' counsel represents that, if the Court grants this Joint Motion and approves the Settlement Agreement, Plaintiffs' counsel will continue to provide legal advice to the Plaintiffs regarding the terms of the Settlement Agreement and will expend additional attorney time administering the settlement proceeds to the

Plaintiffs for which counsel willreceive no additional compensation. All these factors warrant the Court approving the Parties' negotiated payment of Plaintiffs' attorneys' fees, expenses, and costs in this matter.

## IV.  CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court approve the Parties' Joint Motion and enter the Proposed Order attached hereto as **Exhibit 2**.

Respectfully submitted: November 5, 2024.

| | |
|---|---|
| */s/ M. Travis Foust* | */s/ Eric R. Magnus* |
| M. Travis Foust | Eric R. Magnus |
| Georgia Bar No. 104996 | Georgia Bar No. 801405 |
| tfoust@pcwlawfirm.com | Eric.magnus@jacksonlewis.com |
| | |
| PARKS, CHESIN & WALBERT, P.C. | JACKSON LEWIS P.C. |
| 1355 Peachtree Street | 171 17th Street NW |
| Suite 2000 | Suite 1200 |
| Atlanta, GA  30309 | Atlanta, Georgia 30363 |
| Telephone: 404.873.8000 | Telephone: 404-525-8200 |
| Facsimile: 404.873.8050 | Facsimile: 404-525-1173 |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |